## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

TARINA SKEEN and CHEYENNE BLANUSA
on behalf of themselves and all others
similarly situated,                                    CASE NO.: _____

      Plaintiffs,                               CLASS ACTION

v.                                                     JURY TRIAL DEMANDED

KAS DIRECT, LLC d/b/a BABYGANICS,

      Defendant.
_____/

## CLASS ACTION COMPLAINT

Plaintiffs, TARINA SKEEN and CHEYENNE BLANUSA (collectively, "**Plaintiffs**"), on

behalf of themselves and all others similarly situated, bring this class action against Defendant,

KAS Direct, LLC d/b/a Babyganics ("**Babyganics**" or "**Defendant**"), and allege on personal

knowledge, investigation of their counsel, and on information and belief as follows:

## NATURE OF ACTION

1.      This is a class action brought by Plaintiffs, on behalf of themselves and all other

similarly situated persons, against Babyganics.  Plaintiffs seek damages and equitable and legal

remedies for themselves and the putative Class, which includes consumers who purchased

Babyganics® brand Chamomile Verbena Conditioning Shampoo + Body Wash, Fragrance-Free

Conditioning Shampoo + Body Wash, Fragrance-Free Bubble Bath, Chamomile Verbena Bubble

Bath, Fragrance-Free Moisturizing Therapy Cream Wash, Chamomile Verbena Squeeze & Foam

Shampoo + Body Wash, Orange Blossom Night Time Bubble Bath, Fragrance-Free Shampoo +

Body Wash, Chamomile Verbena Shampoo + Body Wash and/or Orange Blossom Night Time

Shampoo + Body Wash (collectively, the "**Babyganics Bath Products**" or "**Products**").

1

2.     This action arises out of Defendant's deceptive and misleading labeling and marketing of the Babyganics Bath Products as "Tear Free", gentle, non-allergenic, and safe for infants and children when, in fact, they contain chemicals and other substances that are eye irritants.

3.     Babyganics has marketed itself as a company that creates safe, gentle and effective products for infants and children, with a thoughtful process of thoroughly vetting ingredients and testing all of the Products to make sure they safely interact with infants and children.  From this campaign, Babyganics has convinced consumers that they can trust the Babyganics name and the specific representations Babyganics makes about its products, including that the Babyganics Bath Products are "Tear Free" and are, therefore, safe and gentle for infants and children's eyes.

4.     During all times material hereto, Defendant engaged in a common plan and scheme, through the use of misleading marketing, advertising and product labeling, which led consumers to believe the Babyganics Bath Products were "Tear Free," and would be "non-irritating" to infants and children's eyes.  Defendant's representations that the Babyganics Bath Products are "Tear Free," gentle, non-allergenic, non-irritating and safe for infants and children are untrue.

5.     Scientific testing has shown that many of the ingredients contained in the Products are proven eye irritants. Defendant knows the content and effects of the ingredients in its Products and knows of the effects these Products can have on infants and children's eyes.

6.     Accordingly, it is through Defendant's labeling, advertising, and marketing of the Products as "Tear Free", non-allergenic, non-irritating, safe and/or gentle for infants and children, that consumers have been deceived.

7.     But for Defendant's deceptive and misleading identification of the Products as "Tear Free," non-allergenic, non-irritating, safe and/or gentle, Plaintiffs and the Class would not have purchased the Products.

8.     By way of this action, Plaintiffs seek to remedy the unlawful, unfair, deceptive, and misleading business practices of Defendant with respect to the marketing and sale of the Babyganics Bath Products, which are sold throughout New York, California, Florida and the United States.

9.     Plaintiffs now bring this suit to end Defendant's false, deceptive, and misleading practices and to recover the ill-gotten gains obtained by Defendant through this deception.

## PARTIES

10.     Plaintiff, Tarina Skeen, is and was at all times relevant to this matter a resident of the state of Florida.  Plaintiff Skeen purchased certain Babyganics Bath Products that are the subject of this Complaint.  Most recently, Plaintiff Skeen purchased Babyganics Chamomile Verbena Shampoo + Body Wash on May 16, 2017 from a Publix grocery store located in Daytona Beach, Florida.

11.     Plaintiff, Cheyenne Blanusa, is and was at all times relevant to this matter a resident of the state of California.  Plaintiff Blanusa purchased certain Babyganics Bath Products that are the subject of this Complaint.  Specifically, Plaintiff Blanusa purchased a Babyganics Essentials Set, which included Chamomile Verbena Bubble Bath and Chamomile Verbena Squeeze & Foam Shampoo + Body Wash, on March 6, 2017, from a Babies R Us located in West Covina, California.

12.     Defendant, KAS Direct, LLC, is a Delaware limited liability corporation.  At all times relevant to this matter, Defendant was a citizen of the state of New York with a principal place of business in Westbury, New York.  At all times relevant to this complaint, Defendant has transacted business in this judicial district and throughout the United States, including New York,

Florida and California, under the name "Babyganics" pursuant to which Defendant manufactures, markets, distributes and sells a variety of consumer products for infants and children.

## JURISDICTION AND VENUE

13.     This Court has personal jurisdiction over Defendant in this matter.  The acts and omissions giving rise to this action occurred in the state of New York.  Defendant has been afforded due process because it has, at all times relevant to this matter, individually or through its agents, subsidiaries, officers and/or representatives, operated, conducted, engaged in and carried on a business venture in this state and/or maintained an office or agency in this state, and/or sold products, committed a statutory violation within this state related to the allegations made herein, and caused injuries to Plaintiffs and putative Class Members, which arose out of the acts and omissions that occurred in the state of New York, during the relevant time period, at which time Defendant was engaged in business activities in the state of New York.

14.     Under 28 U.S.C. § 1391, venue is proper in the Southern District of New York because Defendant conducts business in this District, maintains a principle place of business in this District, and has intentionally availed itself of the laws and markets within this District.

## FACTS COMMON TO ALL CLASS MEMBERS

15.     At all times relevant to this matter, Defendant created, developed, marketed, sold and distributed the Babyganics Bath Products to consumers throughout the United States.

16.     According to Defendant's website, the Babyganics Bath Products are part of "a brand designed by parents, tested and proven to be safe and effective when used on or around babies."[1]

---

[1] http://babyganics.com/our-glossary/ (last visited December 8, 2016).

17.    The packaging for each of the Babyganics Bath Products includes the prominent representation that the Product is "Tear Free" on the front label.

18.    Defendant has prominently displayed the "Tear Free" representation on the front of its Product packaging because it is well aware of consumers' concerns regarding the potential for eye irritation and injury in bath products for infants and children.

19.    These consumers are particularly interested in purchasing bath products for infants and children that are free of ingredients that can cause eye irritation and/or injury.

20.    Because of this concern, infant and child bath products (including shampoos, body washes, and bubble bath products) can be specially formulated to reduce the concentration or, in some cases, the presence of conventional adult shampoo ingredients that can irritate or injure the eyes.

21.    Manufacturers, such as Defendant, are well aware of the fact that infant and child bath products' propensity for eye irritation, or lack thereof, is a crucial factor in consumer purchasing decisions.  Nearly every major infant and/or children's bath product on the market in the United States makes some representation in its advertising, marketing and labeling regarding eye irritation, or lack thereof.

22.    Such label representations include, but are not limited to, Johnson's Baby Shampoo's representation of "No More Tears", Johnson's Head-to-Toe Baby Wash's representation of "No More Tears", Johnson's Baby Bedtime Bath's representation of "No More Tears", Johnson's Baby Moisture Wash's representation of "No More Tears", Honest Shampoo & Body Wash's representation of "Tear-Free", Cetaphil Baby Wash & Shampoo's representation of "Tear Free", California Baby Shampoo & Body Wash's representation of "Tear Free", Burt's Bees Baby Shampoo & Wash's representation of "No Tears", Burt's Bees Baby Bee Shampoo &

Wash's representation as "Tear Free", Dial Kids Body & Hair Wash's representation as "Tear Free", Suave Kids 2-in-1 Shampoo + Conditioner's representation as "Tear Free", Suave Kids 3-in-1 Shampoo + Conditioner + Body Wash's representation as "Tear Free", Aquaphor Baby Wash & Shampoo's representation as "Tear-free", and L'Oreal Kids Extra Gentle 2-in-1 Shampoo's representation of "No Tears!".

23.     Defendant has capitalized on consumers' concerns and desire for purportedly "tear free", "no more tears" and/or "no tears" products by advertising, selling, and representing the Products as "Tear Free" when, in fact, the Babyganics Bath Products contain chemicals and other substances that are proven eye irritants.

24.     For instance, the Babyganics Bath Products have similar formulations, and each contain sodium lauroyl methyl isethionate, propanediol, caprylyl/capryl glucoside, sodium lauroyl, ethylhexylglycerin, citric acid, trisodium ethylenediamine disuccinate, dehydroacetic acid, phenoxyethanol, sodium hydroxide—all of which have been shown to be skin irritants, eye irritants, or both.

25.     Testing of the Babyganics Bath Products reveals that the Products contain several ingredients that were shown to be ocular irritants under conditions of a standard ocular testing bioassay.

26.     Testing also revealed that the Products have Ph levels below the neutral Ph level of 7, indicating that Products contain chemicals or other substances that are acidic.  Exposure to acidic chemicals in the eye can cause eye injuries, including, but not limited to, corneal abrasions.

**Defendant's "Tear Free," Safe, Gentle And Product Superiority Representations**

27.     Defendant's "Tear Free" representation is featured prominently, in the form of a graphic, on the front label of each of the Babyganics Bath Products. The "Tear Free" graphic also appears on Defendant's website and in its marketing materials in the following forms:























28.     On its website, Defendant includes a glossary so consumers understand the meaning of the representations on its Product labels.  This glossary defines the terms "Babyganics" and "Tear Free" as follows:

> Babyganics[:] A brand designed by parents, tested and proven to be safe and effective when used on or around babies.[2]
>
> ***
>
> Tear Free[:] This product has been found to be non-irritating to the eyes in an independent, clinical test.[3]

29.     On its website, Defendant specifically represents its Fragrance-Free Shampoo + Body Wash as safe and gentle for eyes:

> Go forth and foam. To a baby, bath time is a crazy carnival of wondrous sights and sounds. *But don't be fooled— there's real*

---

[2] http://babyganics.com/our-glossary/ (last visited November 7, 2016).
[3] http://babyganics.com/our-glossary/ (last visited May 30, 2017).

> *cleaning going on here and every bubble is safe for eyes and gentle on skin.* Thick, soft, instant-foam gently cleanses from head to toe and rinses clean, leaving your baby's hair and skin soft and nourished. Hey, we're not foolin' around here.[4]

30.     Defendant further touts on its website that the Products are safe, gentle and non-irritating:

> Are Babyganics skincare products non-irritating?
>
> Absolutely. Our personal care products are tested by independent clinical laboratories to make sure they are non-sensitizing and non-irritating. We err on the side of caution and avoid using ingredients like parabens, phthalates and synthetic fragrance that could potentially cause an allergic reaction for those with developing, sensitive skin (your babies!).[5]

31.     In an effort to convince consumers that its products are safe, gentle, effective and superior to other products on the market, Defendant has made the following representations on its website, which ensures parents that its "goal is to create products that parents feel good about using around their babies…":

- **Safety:**

  > For every product we make, we balance:
  >
  > Safety
  >
  > *Is this product safe to use around babies?*
  >
  > We create products that help parents care for their babies. If one of our products doesn't help in that effort, we simply don't make it.[6]

- **Formulation and Testing**

  **How we formulate our products:**

---

[4] http://babyganics.com/products/shampoo-body-wash-fragrance-free/ (last visited November 7, 2016) (emphasis added).

[5] http://babyganics.com/customer-service/ (last visited November 7, 2016).

[6] http://babyganics.com/our-standards/ (last visited May 23, 2017).

Ingredient selection

We always start with plant-based ingredients, organic when practical, as well as carefully chosen synthetics or preservatives needed to create the kind of formulas that work effectively and that parents can feel good about using around their babies.

Our no's

Our list of "never use" ingredients come from sources such as EU, Canada and US lists of ingredients to avoid and refers to industry standards like NPA and EWG. We always ask "Is this something we'd confidently use around or on our babies?" If you see it on the shelf, the answer was "yes."[7]

***

Our formulas themselves start with a combination of *ingredients that we've thoroughly vetted,* and we always exclude our list of ingredient "No's." *Then we test the heck out of everything*, from the necessary tests to specific additional ones depending on how a product will interact with you and your baby.

*At the same time we think long and hard about what we're packing that product* in, considering everything from usability to cost to how it impacts the environment.

Finally, *we evaluate every complete batch for pH*, odor, color and more…[8]

***

**Testing 1, 2, 3 (4, 5, 6…)**

We thoroughly test every product we create to make sure that the product is safe to use on and around babies.

---

[7] *Id.*
[8] *Id.*

We put our products through the tests that are absolutely necessary AND those that go above and beyond what's technically required depending on how a product will interact with you and your baby.

Since we make such a variety of products, many of which require unique tests, you can bet we've got a pretty comprehensive list![9]

**We put a lot of thought into what we do (and into what we do not do).**

Formulation is about more than just a product's "recipe." *The ingredients we choose* (and the ones we don't), the box, tube, or bottle we select for our formulas, and the kind of packaging material we use *all play a role in creating our best possible product.*[10]

- **Effectiveness**

   Effectiveness

   *If our products don't work well, why would parents use it?*

   We formulate products that do what they say they'll do, always keeping babies in mind, and continue to do it reliably over time.[11]

32.    Defendant's ongoing practice of advertising, marketing, labeling, selling, and representing the Products as "Tear Free" when, in fact, they contain proven eye irritants is likely to deceive ordinary consumers of the Products and has deceived Plaintiffs.

33.    By representing on the front of the Products' packaging, in a highlighted graphic, that the Products are "Tear Free", Defendant leads reasonable consumers to believe that the Products are non-irritating, safe and gentle, and will not cause eye irritation or other eye injuries.

---

[9] *Id.*
[10] *Id.*
[11] *Id.*

34.    Plaintiffs reasonably understood the labeling and marketing of the Products to mean or imply to a reasonable consumer that the Products could not cause tearing from the eyes and/or eye irritation.

35.    Yet, in reality, the Products can and do cause eye irritation and injuries, including burning and corneal injuries, when used in accordance with the instructions provided with the Products by Defendant.

36.    For instance, the parent of 2-year-old Hunter Jones sued Defendant after she alleged that her young son suffered bilateral chemical burns, covering 90% of the surface of his corneas, after using Defendant's Night Time Baby Shampoo + Body Wash.[12]

37.    Further, and as discussed below, numerous consumers have complained online that the Products have caused eye irritation and injuries to their children.

38.    Based on the labeling and marketing of the Products, Plaintiffs reasonably believed that the Products could not cause tearing from the eyes and/or eye irritation.  Plaintiffs purchased the Products in reliance on Defendant's claims that the Products are "Tear Free", safe, and gentle.

39.    As depicted herein, the Products' labeling leads reasonable consumers to believe that the Products are "Tear Free" and, thus, cannot cause tearing from the eyes and/or eye irritation. Yet, the Products contain several ingredients that have been shown to cause eye irritation, and testing reveals that the Products are, in fact, eye irritants.

40.    Defendant knew, or reasonably should have known, that its representations that the Products are "Tear Free" are false, deceptive, misleading, and unlawful.  Numerous consumers have posted complaints on the Internet that the Products irritated their children's eyes:

- Foam beautifully. Smell super gross

---

[12] *Jones v. KAS Direct, LLC*, Case No. 3:16-cv-02404 (S.D. Cal. 2016).

These soaps look pretty in packaging, have very safe ingredients, foam Beautifully, and last forever. Unfortunately, the orange blossom smell is gaggingly gross. The bath smelled gross, and my baby smelled gross afterwards. I almost threw them out- but couldn't bear to waste such a "healthy soap." I did keep the container and reuse it with my dr bronners soap! Also- **it didn't appear to be tear free. The baby cried when soap Got in his face- and he didn't when other year free soaps got in his face.**[13]

- **NOT Tear-Free**

This shampoo/ body wash is supposed to be tear-free, and it absolutely is not. **When my baby started crying when it got in his eyes, I tried some in my eyes. It severely burned for about 2** minutes (even while rinsing my eye with water) and the rest of the day my vision in that eye was blurred. I will never buy another Babyganics product because of this.[14]

- **BURNS EYES! Not tear free!**

**I accidentally got a little in my babies eye she immediatly stated crying and rubbing her eyes** so I wondered of course If it hurt. **I rinsed her eyes immediatly and then tested it on myslef, and my eyes burned!!! Both of our eyes were really red for a while and now two hours later my eye STILL burns.**
**NOT SAFE.**
Also not convinced the ingredients are all that great. There are better options out there for.[15]

- **I've even had blurred vision the rest of the night out of that poor eye. Who makes a baby soap that stings**

**This stings eyes. Seriously. My kids were freaking out when it would get in their eyes and I thought they were being babies. So I put some in my eye. Oh my word! I stings!!!! I've even had blurred vision the rest of the night out of that poor eye.** Who makes a baby soap that stings eyes? I thought it was assumed that if it was made to wash a baby, it would be tear free. If it wasn't for that, I would give this 5 stars.[16]

- this isn't my favorite product from this brand

---

[13] https://www.amazon.com/Babyganics-Baby-Shampoo-Body-Fragrance/product-reviews/B00FSCBQV2/ref=cm_cr_dp_qt_hist_one?ie=UTF8&filterByStar=one_star&reviewer Type=avp_only_reviews&showViewpoints= (last visited November 17, 2016) (emphasis added).
[14] *Id.*
[15] *Id.*
[16] *Id.*

Honestly, this isn't my favorite product from this brand... and now I have three bottles!!!! **This definitely stings my little one's eyes like crazy, making it unusable.**[17]

- **Not Tear Free- be careful!!!!**

This is not "Tear free". **My five year old got a chemical burn in his eyes after getting this soap in them at bath time.** Please be careful when using it around small children.[18]

- **NOT tear free!!**

Two stars are for the natural ingredients & non-perfumey smell. **However, it is definitely NOT tear-free as advertised. My daughter cries "hurts eyes!" every time we used it**, and it left her with dry skin even though we only bathe her a few times per week. Would definitely not recommend.[19]

- like they are irritated

We tried the shampoo a few different times and **he always ends up crying when the suds get in his eyes. His eyes also get red, like they are irritated.**[20]

- Jacky K:

No not for us! It got my little guys eye swollen and he cried so much. I was so mad!...The bottle says it is but when we used it he cried so bad. The shrieking pain cry. And his eyes were so swollen and puffy for about 2 hours afterwards. I felt so bad. So now before I put any product on baby I try it on myself first.[21]

**Defendant's Failure to Warn**

---

[17] *Id.*

[18] https://www.amazon.com/Babyganics-Shampoo-Body-Wash-Chamomile/dp/B01LQBFVPU?th=1" \l "customerReviews"
https://www.amazon.com/Babyganics-Shampoo-Body-Wash-Chamomile/dp/B01LQBFVPU?th=1#customerReviews (last visited December 2, 2016).
[19] *Id.*
[20] https://www.amazon.com/Babyganics-Shampoo-Body-Wash-Chamomile/dp/B01LQBFVPU?th=1" \l "customerReviews" (last visited December 2, 2016).
https://www.amazon.com/Babyganics-Shampoo-Body-Wash-Chamomile/dp/B01LQBFVPU?th=1#customerReviews (last visited December 2, 2016).
[21] https://smartmom.co/questions/is-babyganics-tear-free (last visited December 2, 2016).

41.    Despite notice and knowledge of the eye irritation and injuries caused by the Products via the numerous consumer complaints Defendant has directly received and which are publicly available on the Internet, Defendant has failed and/or refused to provide an adequate remedy for the systemic injuries caused by the Products.  Defendant has not recalled, relabeled or reformulated the Products, nor has it warned consumers about the dangers associated with using the Products.

42.    Plaintiffs and Class Members relied, to their detriment, on Defendant to manufacture and distribute safe products.  Instead, Defendant manufactured and distributed bath products for infants and children that are defective in design and/or manufacture.  This practice must stop, and Defendant must be subjected to meaningful consequences of its abhorrent conduct that can cause, and has caused, injuries to infants and children.

43.    As a result of the false, deceptive and misleading statements on the Products' packaging and corresponding advertising materials, Plaintiffs and the putative Class Members purchased the Products with no reason to know or suspect the dangers associated with using the Products.  Not until eye irritation or other eye injuries occurred would a putative Class Member have reason to know or suspect that the Products are defective.

44.    Unknown to Plaintiffs and putative Class Members at the time of purchase, and known to Defendant, the Products contain ingredients, or a combination of ingredients, that cause eye irritation or other eye injuries upon proper application.

45.    Defendant is aware that the Products cause eye irritation and/or injuries due to a known material design or manufacturing defect.  Despite Defendant's knowledge, Defendant failed to take reasonable steps to disclose to and/or warn Plaintiffs and putative Class Members of the damages associated with using the Products.

46.     As the direct and proximate result of Defendant's false, deceptive and/or misleading statements, Plaintiffs and putative Class Members have suffered injury-in-fact and a loss of money or property through the out-of-pocket costs expended to purchase the Products.

47.     By marketing, selling, and distributing the Products to consumers throughout the United States, Defendant made actionable statements that the Products were free of defects in design and/or manufacture, and that they were safe and fit for their ordinary intended use and purpose. Further, Defendant concealed what it knew or should have known about the safety risks resulting from the material defects in the design and/or manufacture of the Products.

48.     Defendant made the above-described actionable statements with the knowledge that the representations were false, deceptive and/or misleading, and with the intent that consumers rely on them. Alternatively, Defendant was reckless in not knowing that the representations were false, deceptive and/or misleading at the time that they were made.

## PLAINTIFFS' FACTUAL ALLEGATIONS

**Plaintiff Tarina Skeen**

49.     After viewing advertisements and/or Product packaging for Babyganics Chamomile Verbena Shampoo + Body Wash stating that the Product was "Tear Free", Plaintiff Tarina Skeen purchased Babyganics Bath Products on approximately three (3) occasions during the Class Period. Most recently, Plaintiff Skeen purchased Babyganics Chamomile Verbena Shampoo + Body Wash during the week of May 15, 2017 from Publix in Daytona Beach, Florida, for approximately $10.00.

50.     Plaintiff Skeen specifically purchased this Babyganics Bath Product because she reasonably believed Defendant's representations that it was "Tear Free," safe and gentle, and would therefore not cause eye irritation and/or injury to her child.

51.     Plaintiff Skeen reasonably relied upon the deceptive and misleading "Tear Free" claims in purchasing the Babyganics Bath Product.

52.     Plaintiff Skeen used the Babyganics Bath Product on her four year-old and seventeen month-old children shortly after she purchased it, and followed the Product directions during application.  At that time, Plaintiff Skeen's four year-old son experienced extreme eye irritation, including burning, pain and redness, from the Babyganics Bath Product, causing him to cry from the pain and irritation.

53.     Plaintiff Skeen previously used other "tear free" shampoo and body wash products on her children, and her children did not experience any eye irritation and/or injury from those products.

54.     Plaintiff Skeen suffered injury by her purchase of this Babyganics Bath Product in that she was deceived into purchasing the Babyganics Bath Product based on Defendant's representations that the Babyganics Bath Product was "Tear Free" and did not pose a risk of eye irritation and/or injury to her children's eyes.

55.     At no time did Defendant provide Plaintiff Skeen with any warnings concerning the potential dangers of using this Babyganics Bath Product.

56.     Plaintiff Skeen would not have purchased the Babyganics Bath Product had she known that it contained ingredients that are proven eye irritants and, thus, are not "Tear Free" and are potentially dangerous for infants and children's eyes.

**Plaintiff Cheyenne Blanusa**

57.     After viewing advertisements and/or Product packaging for Babyganics Bath Products, which stated that that the Products were "Tear Free", Plaintiff Blanusa purchased a Babyganics Essentials Set on March 6, 2017 from a Babies R Us located in West Covina,

California for approximately $19.99.  This Set included Chamomile Verbena Bubble Bath and Chamomile Verbena Squeeze & Foam Shampoo + Body Wash, along with hand sanitizer, dish soap and lotion.

58.    Plaintiff Blanusa specifically purchased the Babyganics Bath Products because she reasonably believed Defendant's representations that the Products were "Tear Free," safe and gentle, and would therefore not cause eye irritation and/or injury to her child.

59.    Plaintiff Blanusa reasonably relied upon the deceptive and misleading "Tear Free" claims in purchasing the Babyganics Bath Products.

60.    Plaintiff Blanusa used the Chamomile Verbena Squeeze & Foam Shampoo + Body Wash on her two-month old son shortly after purchasing the Product, and followed the Product directions during application.  At that time, Plaintiff Blanusa's child experienced extreme irritation, including burning, pain and redness, from the Babyganics Bath Products, causing her child to cry.

61.    After her child experienced extreme eye irritation as a result of using the Babyganics Bath Products, Plaintiff Blanusa purchased another brand of shampoo labeled as "tear-free" and has successfully used this shampoo on her child without incident.

62.    Plaintiff Blanusa suffered injury by her purchase of the Babyganics Bath Products in that she was deceived into purchasing the Babyganics Bath Products based on Defendant's representations that the Babyganics Bath Products were "Tear Free" and did not pose a risk of eye irritation and/or injury to her child's eyes.

63.    At no time did Defendant provide Plaintiff Blanusa with any warnings concerning the potential dangers of using the Babyganics Bath Products.

64.    Plaintiff Blanusa would not have purchased the Babyganics Bath Products had she known that the Babyganics Bath Products contained ingredients that are proven eye irritants and, thus, are not "Tear Free" and are potentially dangerous for infants and children's eyes.

## CLASS ACTION ALLEGATIONS

65.    Plaintiffs bring this action on their own behalf, and on behalf of the following Class and Subclasses pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3).  Specifically, the Class and Subclasses are defined as:

> All persons and/or individuals who purchased Babyganics® brand Chamomile Verbena Conditioning Shampoo + Body Wash, Fragrance-Free Conditioning Shampoo + Body Wash, Fragrance-Free Bubble Bath, Chamomile Verbena Bubble Bath, Fragrance-Free Moisturizing Therapy Cream Wash, Orange Blossom Night Time Bubble Bath, Fragrance-Free Shampoo + Body Wash, Chamomile Verbena Shampoo + Body Wash, Chamomile Verbena Squeeze & Foam Shampoo + Body Wash, and/or Orange Blossom Night Time Shampoo + Body Wash in the United States or its territories between June 2, 2013 and the present.

> **Florida Subclass**

> All persons and/or individuals who purchased Babyganics® brand Chamomile Verbena Conditioning Shampoo + Body Wash, Fragrance-Free Conditioning Shampoo + Body Wash, Fragrance-Free Bubble Bath, Chamomile Verbena Bubble Bath, Fragrance-Free Moisturizing Therapy Cream Wash, Orange Blossom Night Time Bubble Bath, Fragrance-Free Shampoo + Body Wash, Chamomile Verbena Shampoo + Body Wash, Chamomile Verbena Squeeze & Foam Shampoo + Body Wash, and/or Orange Blossom Night Time Shampoo + Body Wash in Florida between June 2, 2013 and the present.

> **California Subclass**

> All purchasers and/or individuals who purchased Babyganics® brand Chamomile Verbena Conditioning Shampoo + Body Wash, Fragrance-Free Conditioning Shampoo + Body Wash, Fragrance-Free Bubble Bath, Chamomile Verbena Bubble Bath, Fragrance-Free Moisturizing Therapy Cream Wash, Orange Blossom Night Time Bubble Bath, Fragrance-Free Shampoo + Body Wash, Chamomile Verbena Shampoo + Body Wash, Chamomile Verbena

Squeeze & Foam Shampoo + Body Wash, and/or Orange Blossom
Night Time Shampoo + Body Wash in California between June 2,
2013 and the present.

66.    Excluded from the Class and Subclasses are (a) any person who purchased the
Products for resale and not for personal or household use, (b) any person who signed a release of
Defendant in exchange for consideration, (c) any officers, directors or employees, or immediate
family members of the officers, directors or employees, of Defendant or any entity in which
Defendant has a controlling interest, (d) any legal counsel or employee of legal counsel for
Defendant, and (e) the presiding Judge in the Lawsuit, as well as the Judge's staff and their
immediate family members.

67.    Plaintiffs reserve the right to amend the definition of the Class and/or Subclasses if
discovery or further investigation reveals that the Class and/or Subclasses should be expanded or
otherwise modified.

68.    **Numerosity.**  Class Members are so numerous and geographically dispersed that
joinder of all Class Members is impracticable.  While the exact number of Class Members remains
unknown at this time, upon information and belief, there are thousands, if not hundreds of
thousands, of putative Class Members.  Class Members may be notified of the pendency of this
action by mail and/or electronic mail, which can be supplemented if deemed necessary or
appropriate by the Court with published notice.

69.    **Predominance of Common Questions of Law and Fact.**  Common questions of
law and fact exist as to all Members of the Class and predominate over any questions affecting
only individual Class Members. These common legal and factual questions include, but are not
limited to, the following:

a. Whether Defendant engaged in fraudulent, unfair, unlawful, or deceptive business practices by falsely representing that the Products are "Tear Free";

b. Whether Defendant failed to comply with applicable warranties;

c. Whether Defendant's conduct constitutes a breach of applicable warranties;

d. Whether the Products can and do cause tearing from the eyes, eye irritation, and/or injuries when used as directed by Defendant;

e. Whether and when Defendant knew or should have known that the Products can and do cause tearing from the eyes, eye irritation, and/or injuries when used as directed by Defendant;

f. Whether the Products contain design defects;

g. Whether the Products are defective in their manufacture;

h. Whether Defendant was unjustly enriched by the conduct described herein;

i. Whether Defendant's acts and misrepresentations of material facts violated certain state deceptive practice acts, including those of California and Florida;

j. Whether Defendant engaged in unfair, unlawful and/or fraudulent business practices under California law;

k. Whether Defendant's use of false or deceptive "Tear Free" advertising constituted false advertising under California Law;

l. Whether Plaintiffs and putative Class Members have suffered an ascertainable loss of monies or property or other value as a result of Defendant's acts and misrepresentations of material facts;

m. Whether Plaintiffs and putative Class Members are entitled to monetary damages and, if so, the nature of such relief; and

n. Whether Plaintiffs and putative Class Members are entitled to equitable, declaratory or injunctive relief and, if so, the nature of such relief.

70.    **Typicality.**  Plaintiffs' claims are typical of the claims of the Members of the putative Class, as each putative Class Member was susceptible to the same deceptive, misleading, conduct and purchased the Defendant's Babyganics Bath Products.  Further, each putative Class Member was subject to the same common, inherent defect in the Products. Plaintiffs share the aforementioned facts and legal claims or questions with putative Class Members, and Plaintiffs and all putative Class Members have been similarly affected by Defendant's common course of conduct alleged herein. Plaintiffs and all putative Class Members sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendant's wrongful conduct as alleged herein.

71.    **Adequacy.**  Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the Class Members they seek to represent; their claims are common to all members of the Class and they have a strong interest in vindicating their rights. Plaintiffs will fairly and adequately represent and protect the interests of the putative Class. Plaintiffs have retained counsel with substantial experience in handling complex class action litigation, including the questions that arise in this type of consumer protection litigation.  Further, Plaintiffs and their counsel are committed to the vigorous prosecution of this action.

72.    **Superiority.**  A class action is superior to other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

a. The damages suffered by each individual putative Class Member do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct;

b. Even if individual Class Members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

c. The claims presented in this case predominate over any questions of law or fact affecting individual Class Members;

d. Individual joinder of all putative Class Members is impracticable;

e. Absent a class, Plaintiffs and putative Class Members will continue to suffer harm as a result of Defendant's unlawful conduct; and

f. This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiffs and putative Class Members can seek redress for the harm caused by Defendant.

73.     In the alternative, the Class may be certified for the following reasons:

a. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudication with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant;

b. Adjudications of individual Class Member's claims against Defendant would, as a practical matter, be dispositive of the interests of other putative Class Members who are not parties to the adjudication and may substantially impair or impede the ability of other putative Class Members to protect their interests; and

c. Defendant has acted or refused to act on grounds generally applicable to the putative Class, thereby making appropriate final and injunctive relief with respect to the putative Class as a whole.

74.     Pursuant to Rule 23(b)(2), Defendant has acted or refused to act on grounds generally applicable to the putative Class, thereby making final injunctive or corresponding

declaratory relief appropriate with respect to the putative Class as a whole.  In particular, Defendant has engaged in conduct resulting in misleading consumers about the ingredients and safety of its Products.  Further, Defendant has designed, manufactured, marketed, sold and/or distributed defective Products, which Defendant knows or should have known cause injuries to consumers upon using the Products as directed by Defendant, and provided no disclosure or warning to consumers regarding these severe consequences.

75.    Defendant's conduct has been uniformly directed at all consumers in the United States, and the conduct continues presently.  Thus, injunctive relief on a class-wide basis is a viable and suitable solution to remedy Defendant's continuing misconduct.

76.    Plaintiffs would purchase the Products again if the ingredients and/or combination of ingredients and/or formula were changed so that the Products were, in fact, "Tear Free" as represented by Defendant.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### (15 U.S.C. § 2301, *et seq.*)

77.    Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 76 as though fully set forth herein.

78.    Plaintiffs assert this cause of action on behalf of the Class.

79.    Defendant sold the Products as part of its regular course of business.

80.    Plaintiff and putative Class Members purchased the Products either directly from Defendant or through authorized retailers, such as Publix grocery store and Babies R Us, among others.

81.     The Magnuson–Moss Warranty Act, 15 U.S.C. §§ 2301, et seq., ("**MMWA**") provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written warranty.

82.     The Products are "consumer product[s]" as that term is defined by 15 U.S.C. § 2301(1), as they constitute tangible personal property and are distributed in commerce and are normally used for personal, family or household purposes.

83.     Plaintiffs and Members of the putative Class are "consumers" and "buyers" as defined by 15 U.S.C. § 2301(3), since they are buyers of the Products for purposes other than resale.

84.     Defendant is an entity engaged in the business of making and selling baby and children's bath products, either directly or indirectly, to consumers such as Plaintiffs and the putative Class. As such, Defendant is a "supplier" as defined in 15 U.S.C. § 2301(4).

85.     The amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interest and costs) computed on the basis of all claims asserted in this lawsuit. Further, the Class includes over 100 individuals.

86.     Defendant made promises and representations in express warranties provided to all consumers, which became the basis of the bargain between Plaintiffs, putative Class Members and Defendant. Defendant expressly warranted that the Products were fit for their intended purposes by making the express warranties that the Products are "Tear Free".

87.     Defendant's aforementioned written affirmations of fact, promises and/or descriptions, as alleged, are each a "written warranty." The affirmations of fact, promises and/or descriptions constitute a "written warranty" within the meaning of the MMWA.

88.     Defendant breached the applicable warranty because the Products suffer from latent and/or inherent defects that cause substantial injuries, rendering the Products unfit for their intended use and purpose.  These defects substantially impair the use, value and safety of the Products.

89.     The latent and/or inherent defects at issue herein existed when the Products left Defendant's possession or control and were sold to Plaintiffs and putative Class Members.  The defects were not discoverable by Plaintiffs and putative Class Members at the time of their purchase of the Products.

90.     All conditions precedent to seeking liability under this claim for breach of express warranty have been performed by or on behalf of Plaintiffs and others in terms of paying for the goods at issue.  Defendant was placed on reasonable notice of the defects in its Products and its breach of the warranty, and has failed to cure the defects for Plaintiffs and putative Class Members, despite having significant time to do so.

91.     Plaintiff Skeen used Babyganics Chamomile Verbena Shampoo + Body Wash on her child shortly after purchasing the Product.  At that time, Plaintiff Skeen's child experienced extreme eye irritation from the Product.

92.     Plaintiff Blanusa used Babyganics Chamomile Verbena Squeeze & Foam Shampoo + Body Wash on her child shortly after purchasing the Product.  At that time, Plaintiff Blanusa's child experienced extreme eye irritation from the Product.

93.     Defendant breached its express warranties as the Products did not contain the properties they were represented to possess.

94.     Defendant's breaches of warranties have caused Plaintiffs and putative Class Members to suffer injuries, pay for defective Products, and enter into transactions they would not

have entered into for the consideration paid.  As a direct and proximate result of Defendant's breaches of warranties, Plaintiffs and putative Class Members have suffered damages and continue to suffer damages, including economic damages in terms of the cost of the Products.

95.    As a result of Defendant's breaches of these warranties, Plaintiffs and putative Class Members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and all such other relief deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.  Plaintiffs and the putative Class therefore seek and are entitled to recover damages and other legal and equitable relief, injunctive relief and costs and expenses (including attorneys' fees based upon actual time expended), as provided in 15 U.S.C. § 2310(d).

## COUNT II
### FRAUD
**(on behalf of the Nationwide Class and State Subclasses)**

96.    Plaintiffs repeat and re-alleges the allegations in paragraphs 1 through 76 as though fully set forth herein.

97.    Plaintiffs assert this cause of action on behalf of the Nationwide Class and State Subclasses.

98.    As alleged herein, Defendant knowingly made material misrepresentations and omissions regarding the Products on their packaging, website and in advertisements.

99.    Defendant made these material misrepresentations and omissions in order to induce Plaintiffs and putative Class Members to purchase the Products.

100.    Rather than inform consumers about the dangers associated with using the Products, including the risk of eye irritation and/or eye injury, Defendant represented the Products were "Tear Free" and safe and gentle.

101.    The Products are not "Tear Free" as described on their packages.  Rather, they are composed of several ingredients that are proven eye irritants.  Further, testing of the Products has shown that they are moderate eye irritants and has also revealed that the Products have Ph levels below the neutral Ph level of 7, indicating that Products contain chemicals or other substances that are acidic.

102.    Defendant knew the Products were not "Tear Free" but nevertheless made such representations through its marketing, advertising and Product labeling.  In reliance on these and other similar representations, Plaintiffs and putative Class Members were induced to, and did pay monies, to purchase the Products.

103.    Had Plaintiffs known the truth about the dangers and hazards associated with the Products, they would not have purchased the Products.

104.    As a proximate result of the fraudulent conduct of Defendant, Plaintiffs and the putative Class paid monies to Defendant through their regular retail sales channels, to which Defendant is not entitled, and have been damaged in an amount to be proven at trial.

**COUNT III**
**NEGLIGENT MISREPRESENTATION**
**(on behalf of the Nationwide Class and State Subclasses)**

105.    Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 76 as though fully set forth herein.

106.    Plaintiffs assert this cause of action on behalf of the Nationwide Class and State Subclasses.

107.    As set forth above, Defendant marketed and advertised the Products as "Tear Free", gentle, non-allergenic, and safe for infants and children.

108.    Contrary to Defendant's representations, the Products are not "Tear Free" as described on their packages.  Rather, they are composed of several ingredients that are proven eye irritants.  Further, testing of the Products has shown that they are, in fact, moderate eye irritants and has also revealed that the Products have Ph levels below the neutral Ph level of 7, indicating that Products contain chemicals or other substances that are acidic.

109.    Defendant negligently misrepresented material facts about the Products' dangerous nature.

110.    Defendant breached its duty to disclose the dangerous nature of the Products to consumers.

111.    Defendant breached its duty by failing to disclose this information to Plaintiffs and putative Class Members and by misrepresenting the Products as "Tear Free," gentle, non-allergenic, and safe for infants and children, when they are not.

112.    At the time Defendants made these false representations to consumers, Defendants knew or should have known that these representations were incorrect as the Products were unreasonably dangerous and had caused injuries to consumers.

113.    The misrepresentations made by Defendant, upon which Plaintiffs and other Class and Subclass Members reasonably and justifiably relied, were intended to induce and did actually induce Plaintiffs, Class and Subclass Members to purchase the Products.

114.    Plaintiffs did not know that Defendant's representations were false and, therefore, were justified in their reliance.

115.    The information withheld from Plaintiffs and putative Class and Subclass Members is material to reasonable consumers.

116.    Had Plaintiffs, Class and Subclass Members known the truth about the dangers associated with the Products, they would not have purchased the Products.

117.    As a direct and proximate result of Defendant's negligent misrepresentations described herein, Plaintiffs sustained injuries and damages as alleged herein.

118.    Plaintiffs are entitled to compensatory damages and such other and further relief as this Court deems just and proper.

## COUNT IV
### VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, §501.201, *ET SEQ.*, FLORIDA STATUTES ("FDUTPA")
### (on behalf of Florida Subclass)

119.    Plaintiff Skeen repeats and re-alleges the allegations in paragraphs 1 through 76 as though fully set forth herein.

120.    Plaintiff Skeen asserts this cause of action on behalf of herself and the Florida Subclass.

121.    Plaintiff Skeen and the Florida Subclass Members are "consumers" as defined by Florida Statute §501.203(7), and the subject transactions are "trade or commerce" as defined by Florida Statute §501.203(8).

122.    At all times material to this action, Defendant was responsible for designing, formulating, testing, manufacturing, inspecting, packaging, marketing, distributing, supplying and/or selling the Products to Plaintiff Skeen and Florida Subclass Members.  The Products are "goods" within the meaning of FDUTPA.

123.    FDUPTA was enacted to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

124.    For the reasons discussed herein, Defendant violated and continues to violate

34

FDUPTA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by Florida Statute §501.201, *et seq.*  Defendant's omissions and practices described herein were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

125.    Defendant's actions constitute unconscionable, deceptive or unfair acts or practices.  Defendant's omitted material facts regarding the dangers and hazards associated with the Products by representing the Products as ""Tear Free," gentle, non-allergenic, and safe for infants and children, when they are not.

126.    Defendant failed to disclose that the Products can cause and have caused Injuries when used as intended and has engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers, in violation of FDUTPA.

127.    Specifically, Defendant engaged in the following deceptive and misleading conduct in violation of FDUTPA:

     a.    Defendant designed, formulated, manufactured, inspected, packaged, marketed, distributed, supplied and/or sold the Products, which it represented as "Tear Free," gentle, non-allergenic, and safe for infants and children, when it knew, or should have known, that they were materially defective, not "Tear Free" and could cause, and had caused, tearing from the eyes, eye irritation, and other eye injuries;

     b.    Defendant knew the defect in the Products was unknown to and would not be easily discovered by Plaintiff Skeen and Florida Subclass Members, and would defeat their ordinary, foreseeable and reasonable expectations concerning the performance of the Products;

c.    Defendant failed to warn consumers that the Products could cause tearing from the eyes, eye irritation, and other eye injuries, when used as intended.

128.    Rather than warn consumers about the dangers and hazards associated with the intended use of the Products, Defendant represented the Products as a "Tear Free," gentle, non-allergenic, and safe for infants and children.

129.    Contrary to Defendant's representations, the Products are not "Tear Free" as described on their packages.  Rather, they are composed of several ingredients that are proven eye irritants.  Further, testing of the Products has shown that they are, in fact, moderate eye irritants and has also revealed that the Products have Ph levels below the neutral Ph level of 7, indicating that Products contain chemicals or other substances that are acidic.

130.    Plaintiff Skeen and Florida Subclass Members suffered damages when they purchased the Products, which were materially defective.  Defendant's unconscionable, deceptive and/or unfair practices caused actual damages to Plaintiff Skeen and Florida Subclass Members who were unaware of the Products' defects at the time of purchase.

131.    Defendant's acts and omissions regarding the Products, as described herein, were likely to – and did – deceive consumers acting reasonably under the circumstances. Consumers, including Plaintiff Skeen and putative Florida Subclass Members, would not have purchased the Products had they known about the damages and hazards associated with the intended use of the Products as directed by Defendant.

132.    As a direct and proximate result of Defendant's unconscionable, unfair and deceptive acts, practices and omissions alleged herein, Plaintiff Skeen and Florida Subclass Members have been damaged and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.  In addition, Plaintiff Skeen

and the Florida Subclass Members seek equitable and injunctive relief against Defendant on terms that the Court considers reasonable, and reasonable attorneys' fees and costs.

133.    Plaintiff Skeen and the Florida Subclass Members reserve the right to allege other violations of FDUTPA as Defendant's conduct is ongoing.

**COUNT V**
**BREACH OF EXPRESS WARRANTY**
**(on behalf of the Florida Subclass)**

134.    Plaintiff Skeen repeats the allegations contained in paragraphs 1 through 76 as if fully set forth herein.

135.    Plaintiff Skeen brings this Count individually and on behalf of the Florida Subclass.

136.    Plaintiff Skeen and Florida Subclass Members purchased the Babyganics Bath Products either directly from Defendant or through authorized retailers, such as Publix grocery store and Babies R Us, among others.

137.    Plaintiff Skeen and each member of the Florida Subclass formed a contract with Defendant at the time Plaintiff Skeen and other members of the Florida Subclass purchased the Babyganics Bath Products. The terms of that contract include the promises and affirmations of fact made by Defendant on their product labels and through their marketing campaign.

138.    Defendant expressly warranted to the public, including Plaintiff Skeen and Florida Subclass Members, that the Products were fit for their intended purpose in that the Products are "Tear Free," gentle, non-allergenic, and safe for infants and children, and have "been found to be non-irritating to the eyes in an independent, clinical test." This product labeling and advertising constitutes express warranties, became part of the basis of the bargain, and is part of a standardized

37

contract between Plaintiff Skeen and the Florida Subclass Members on the one hand, and Defendant on the other.

139.    Defendant breached the terms of its contract, including the express warranties, with Plaintiff Skeen and Florida Subclass Members by not providing a product which could provide the benefits described above.  In particular, Defendant has breached its contract, including the express warranties with Plaintiff Skeen and Florida Subclass Members, in that the Products are not "Tear Free gentle, non-allergenic, and safe for infants and children," as described on their product labels and through their marketing campaign.  Rather, they are composed of several ingredients that are proven eye irritants.  Further, testing of the Products has shown that they are, in fact, moderate eye irritants and has also revealed that the Products have Ph levels below the neutral Ph level of 7, indicating that Products contain chemicals or other substances that are acidic.

140.    The defect in the Babyganics Bath Products existed at the time the Products left Defendant's control.

141.    All conditions precedent to seeking liability under this claim for breach of express warranty have been performed by or on behalf of Plaintiff Skeen and others.

142.    As a proximate result of Defendant's breach of contract and warranties, Plaintiff Skeen and Subclass Members have been damaged in an amount to be determined at trial.

**COUNT VI**
**CALIFORNIA'S FALSE ADVERTISING LAW**
**CAL. BUS. & PROF. CODE §§17500, *ET SEQ.* ("FAL")**
**(on behalf of the California Subclass)**

143.    Plaintiff Blanusa repeats the allegations contained in paragraphs 1 through 76 as if fully set forth herein.

144.    Plaintiff Blanusa brings this Count individually and on behalf of the California Subclass.

145.    California's FAL (Bus. & Prof. Code §§17500, *et seq.*) makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

146.    Defendant committed acts of false advertising, as defined by the FAL, by using false and misleading statements, and material omissions, to promote the sale of the Products, as described above, and including, but not limited to, representing that the Products were "Tear Free", gentle, non-allergenic, and safe for infants and children when, in fact, they contain chemicals and other substances that are eye irritants.  The Products are not "Tear Free" as described on their packages.  Rather, they are composed of several ingredients that are proven eye irritants.  Further, testing of the Products has shown that they are, in fact, moderate eye irritants and has also revealed that the Products have Ph levels below the neutral Ph level of 7, indicating that Products contain chemicals or other substances that are acidic.

147.    Defendant knew or should have known, through the exercise of reasonable care, that their statements were untrue and misleading.

148.    Defendant's actions and omissions in violation of the FAL were false and misleading such that the general public is and was likely to be deceived.

149.    As a direct and proximate result of these acts and omissions, consumers have been and are being harmed.  Plaintiff Blanusa and Members of the California Subclass have suffered injury and actual out-of-pocket losses as a result of Defendant's FAL violation because: (a) Plaintiff Blanusa and California Subclass Members would not have purchased the Products if

they had known the true facts; (b) Plaintiff Blanusa and California Subclass Members purchased the Products due to Defendant's misrepresentations and omissions; and (c) the Products did not have the level of quality, effectiveness, or value as promised.

150.    Plaintiff Blanusa brings this action pursuant to Bus. & Prof. Code § 17535 for injunctive relief to enjoin the practices described herein and to require Defendant to issue corrective disclosures to consumers. Plaintiff Blanusa and the California Subclass are therefore entitled to: (a) an order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of its deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiffs' attorneys' fees and costs pursuant to, *inter alia*, California Code of Civil Procedure §1021.5.

## COUNT VII
### VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT
### CAL. CIVIL CODE §§ 1750, *ET SEQ*. ("CLRA")
### (on behalf of the California Subclass)

151.    Plaintiff Blanusa repeats the allegations contained in paragraphs 1through 76 as if fully set forth herein.

152.    Plaintiff Blanusa brings this Count individually and on behalf of the California Subclass.

153.    This cause of action is brought pursuant to the California Consumers Legal Remedies Act, California Civil Code § 1750, *et seq*.

154.    Defendant's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

155.    Plaintiff Blanusa and other California Subclass Members are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

156.    The Products that Plaintiff Blanusa and other similarly situated California Subclass Members purchased from Defendant were "goods" within the meaning of California Civil Code § 1761(a).

157.    By engaging in the actions, representations and conduct set forth in this complaint, Defendant has violated, and continue to violate, §1770(a)(5), § 1770(a)(7), and § 1770(a)(9) of the CLRA.    In violation of California Civil Code §1770(a)(5), Defendant's acts and practices constitute improper representations that the goods they sell have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have.    In violation of California Civil Code §1770(a)(7), Defendant's acts and practices constitute improper representations that the goods they sell are of a particular standard, quality, or grade, when they are of another. In violation of California Civil Code §1770(a)(9), Defendant has advertised goods or services with intent not to sell them as advertised.

158.    Specifically, Defendant's acts and practices led customers to falsely believe that that its Products were "Tear Free" when it knew all such representations to be false and/or misleading.  Plaintiff Blanusa requests that this Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2).  If Defendant is not restrained from engaging in these types of practices in the future, Plaintiff Blanusa and the Members of the California Subclass will continue to suffer harm.

159.    CLRA § 1782 NOTICE.  Irrespective of any representations to the contrary in this Complaint, Plaintiff Blanusa specifically disclaims, at this time, any request for damages under any provision of the CLRA.  Plaintiff Blanusa, however, hereby provides Defendant with notice and demand that, within thirty (30) days from that date, Defendant correct, repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein.

Defendant's failure to do so will result in Plaintiff Blanusa amending this Complaint to seek, pursuant to California Civil Code § 1780(a)(3), on behalf of herself and those similarly situated California Subclass Members, compensatory damages, punitive damages and restitution of any ill-gotten gains due to Defendant's acts and practices.

160.    Plaintiff Blanusa also requests that this Court award her costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(d).

**COUNT VIII**
**VIOLATION OF THE UNFAIR PRONG OF**
**CALIFORNIA'S UNFAIR COMPETITION LAW**
**CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.* ("UCL")**
**(on behalf of the California Subclass)**

161.    Plaintiff Blanusa repeats the allegations contained in paragraphs 1through 76 as if fully set forth herein.

162.    Plaintiff Blanusa brings this Count individually and on behalf of the California Subclass.

163.    The Unfair Competition Law, Cal. Business & Professions Code § 17200, *et seq.* defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.  Business & Professions Code § 17200.

164.    A business act or practice is "unfair" under the UCL if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

165.    Defendant has violated the unfair prong of the UCL by representing the Babyganics Bath Products as "Tear Free", gentle, non-allergenic, and safe for infants and children when, in fact, they contain chemicals and other substances that are eye irritants.

166.    The acts and practices alleged herein are unfair because they caused Plaintiff Blanusa, and reasonable consumers like her, to falsely believe that the Babyganics Bath Products are "Tear Free", gentle, non-allergenic, and safe for infants and children when they are not.

167.    Defendant intended and intends for Plaintiff Blanusa and California Subclass Members to believe that the Products are "Tear Free", gentle, non-allergenic, and safe for infants and children.   As a result, purchasers, including Plaintiff Blanusa and California Subclass Members reasonably believed that they were purchasing "Tear Free" Products that were safe and gentle for their children's eyes and would not cause eye irritation and/or injury.

168.    Defendant's acts and practices constitute "unfair" business acts and practices in that the harm caused by Defendant's wrongful conduct outweighs any utility of such conduct, and that Defendant's conduct: (i) offends public policy; (ii) is immoral, unscrupulous, unethical, oppressive, deceitful and offensive, and/or (iii) has caused (and will continue to cause) substantial injury to consumers, such as Plaintiff Blanusa and the California Subclass.

169.    There were reasonably available alternatives to further Defendant's legitimate business interests, including changing the Products' formulas and/or labels, warning consumers and the public about the risks of and adverse effects caused by the Products, and recalling the Products, other than Defendant's wrongful conduct and omissions described herein.

170.    The gravity of the harm to Members of the California Subclass resulting from these unfair acts and practices is outweighed any conceivable reasons, justifications and/or motives of Defendant for engaging in such deceptive acts and practices.   By committing the acts and practices alleged above, Defendant engages in unfair business practices within the meaning of California Business & Professions Code §§ 17200, *et seq.*

43

171.    Through its unfair acts and practices, Defendant has improperly obtained money from Plaintiff Blanusa and California Subclass Members.  As such, Plaintiff Blanusa requests that this Court cause Defendant to restore this money to Plaintiff Blanusa and all California Subclass Members and to enjoin Defendant from continuing to violate the UCL as discussed herein, and/or from violating the UCL in the future.  Otherwise, Plaintiff Blanusa and California Subclass Members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## COUNT IX
### VIOLATION OF THE "FRAUDULENT" PRONG OF CALIFORNIA'S UNFAIR COMPETITION LAW CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.* ("UCL") (on behalf of the California Subclass)

172.    Plaintiff Blanusa repeats the allegations contained in paragraphs 1through 76 as if fully set forth herein.

173.    Plaintiff Blanusa brings this Count individually and on behalf of the California Subclass.

174.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Pro. Code § 17200.

175.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

176.    Defendant's representations that the Babyganics Bath Products are "Tear Free", gentle, non-allergenic, and safe for infants and children, were fraudulent within the meaning of the UCL because they deceived Plaintiff Blanusa, and were likely to deceive Members of the California Subclass, into believing that the Babyganics Bath Products would not cause eye

irritation and/or eye injury and/or did not contain chemicals and other substances that are eye irritants.

177.    Rather than inform consumers about the dangers associated with using the Products, Defendant represented the Products were "Tear Free" and safe and gentle.  The Products are not "Tear Free" as described on their packages.  Rather, they are composed of several ingredients that are proven eye irritants and have Ph levels below the neutral Ph level of 7, indicating that Products contain chemicals or other substances that are acidic.  Defendant knew the Products were not "Tear Free" but nevertheless made such representations through its marketing, advertising and product labeling.

178.    Defendant intended and intends for Plaintiff Blanusa and California Subclass Members to believe that the Products were "Tear Free", gentle, non-allergenic, and safe for infants and children.  As a result, purchasers, including Plaintiff and Subclass Members reasonably believed that they were purchasing "Tear Free" Products that were safe and gentle for their children's eyes and did not pose the risk of, and cause, eye irritation and/or injury.

179.    Plaintiff Blanusa and California Subclass Members would not have purchased the Babyganics Bath Products had they know that they contain ingredients that are proven eye irritants and, thus, are not "Tear Free" and are potentially dangerous for infants and children's eyes.

180.    Defendant knew the Products were not "Tear Free" but nevertheless made such representations through its marketing, advertising and Product labeling.  In reliance on these and other similar representations, Plaintiff Blanusa and putative California Subclass Members were induced to, and did pay monies, to purchase the Products.

181.    Defendant's acts and practices as described herein have deceived Plaintiff Blanusa and California Subclass Members, and were highly likely to deceive members of the consuming public.

182.    Had Plaintiff Blanusa and California Subclass Members known the truth about the dangers and hazards associated with the Products, they would not have purchased the Products.

183.    Through its fraudulent acts and practices, Defendant has improperly obtained money from Plaintiff Blanusa and the California Subclass.  As such, Plaintiff Blanusa requests that this Court causeDefendant to restore this money to Plaintiff Blanusa and all California Subclass Members, and to enjoin Defendant from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future. Otherwise, Plaintiff Blanusa and the California Subclass may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**COUNT X**
**VIOLATION OF THE "UNLAWFUL" PRONG OF**
**CALIFORNIA'S UNFAIR COMPETITION LAW**
**CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.* ("UCL")**
**(on behalf of the California Subclass)**

184.    Plaintiff Blanusa repeats the allegations contained in paragraphs 1through 76 as if fully set forth herein.

185.    Plaintiff Blanusa brings this Count individually and on behalf of the California Subclass.

186.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Pro. Code § 17200.

187.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

188.    Defendant's representations that the Babyganics Bath Products are "Tear Free", gentle, non-allergenic, and safe for infants and children in connection with its marketing and advertisements concerning the Products violated and continues to violate the FAL as described herein.

189.    Defendant's representations that the Babyganics Bath Products are "Tear Free", gentle, non-allergenic, and safe for infants and children in connection with its marketing and advertisements concerning the Products violated and continues to violate the CLRA as described herein.

190.    As a result of the conduct described above, Defendant has been unjustly enriched at the expense of Plaintiff Blanusa and Members of the proposed California Subclass. Specifically, Defendant has been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent its false, misleading and deceptive conduct.

191.    Through its unlawful acts and practices, Defendant has improperly obtained money from Plaintiff Blanusa and the California Subclass.  As such, Plaintiff Blanusa requests that this court cause Defendant to restore this money to Plaintiff Blanusa and all California Subclass Members, and to enjoin Defendant from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future.  Otherwise, Plaintiff Blanusa and the California Subclass may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## COUNT XI
## UNJUST ENRICHMENT
### (on behalf of the Nationwide Class and State Subclasses)

192.    Plaintiffs repeat and re-allege the allegations in paragraphs 1through 76 as though fully set forth herein.

193.    Plaintiffs assert this cause of action on behalf of the Nationwide Class and State Subclasses.

194.    Defendant's conduct violated, *inter alia*, state and federal law by manufacturing, advertising, marketing and selling its Products while mispresenting material facts.

195.    Plaintiffs and putative Class Members conferred a benefit on Defendant when they purchased the Products, which were not as Defendant represented them to be.  By its wrongful acts and omissions described herein, Defendant was unjustly enriched at the expense of Plaintiffs and putative Class Members.

196.    Plaintiffs' detriment and Defendant's enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

197.    Defendant has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiffs and putative Class Members under circumstances in which it would be unjust for Defendant to be permitted to retain the benefit.  It would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained from its wrongful conduct as described herein in connection with selling the Products.

198.    Plaintiffs and putative Class Members have been damaged as a direct and proximate result of Defendant's unjust enrichment because they would not have purchased the Products had they known that the Products contained eye irritants and known of the dangers and hazards associated with use of the Products.

199.    Defendant either knew or should have known that payments rendered by Plaintiffs and putative Class Members were given and received with the expectation that the Products were safe for use as intended. It is inequitable for Defendant to retain the benefit of payments under these circumstances.

200.    Plaintiffs and putative Class Members are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

201.    When required, Plaintiffs and Class Members are in privity with Defendant because Defendant's sale of the Products was either direct or through authorized sellers.  Purchase through authorized sellers is sufficient to create such privity because such authorized sellers are Defendant's agents for the purpose of the sale of the Products.

202.    As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiffs and putative Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for its inequitable and unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and putative Class Members, pray for a judgment:

a.    Determining that this action is a proper class action and certifying the Class and State Subclasses as defined herein;

b.    Appointing the named Plaintiffs as representatives of the Class and State Subclasses;

c.    Appointing the undersigned as Class Counsel;

d.    Finding Defendant liable to Plaintiffs and Class Members for actual damages in such amount(s) as the Court or Jury may determine;

e.    Awarding statutory damages as appropriate;

f.    Awarding pre- and post-judgment interest;

g.    Awarding injunctive and declaratory relief, as claimed herein;

h.    Awarding Plaintiffs and Class Members attorneys' fees and all litigation costs;

i.   Awarding compensatory damages against Defendant in favor of Plaintiffs and the Class

for damages sustained as a result of Defendant's wrongdoing; and

j.   Awarding such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.


Dated: June 2, 2017                        **TYCKO & ZAVAREEI LLP**

/s/  Jonathan K. Tycko
Jonathan K. Tycko (SDNY Bar No. JT2012, New
York Bar No. 2568483)
Andrea Gold (DC Bar No. 502607)*
1828 L Street NW, Suite 1000
Washington, D.C. 20036
Telephone:  (202) 973-0900
Facsimile:  (202) 973-0950
jtycko@tzlegal.com
agold@tzlegal.com

and

**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
Rachel Soffin (Florida Bar No. 018054)*
Jonathan B. Cohen (Florida Bar No. 0027620)*
201 N. Franklin St., 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-2434
rsoffin@forthepeople.com
jcohen@forthepeople.com

and

**BARBAT, MANSOUR & SUCIU PLLC**
Nick Suciu III*
1644 Bracken Rd.
Bloomfield Hills, Michigan 48302
Telephone:  (313) 303-3472
nicksuciu@bmslawyers.com

50

*Pending pro hac vice application*

*Attorneys for Plaintiffs and putative Class Members*